## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re

PIXELOPTICS, INC.,

        Debtor.

:   **Chapter 7**

:   **Case No. 13-12875 (KJC)**

:   Bid Procedures Hearing Date: T.B.D.
:    (Expedited Hearing Requested)
:   Proposed Bid Procedures Objection Deadline: At Hearing
:   Sale Approval Hearing Date: T.B.D.
:   Sale Objection Deadline:  T.B.D.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### TRUSTEE'S MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF THE ESTATE'S ASSETS, (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE PROPOSED SALE AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (II) AN ORDER (A) APPROVING THE SALE, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING CERTAIN RELATED RELIEF

Jeoffrey L. Burtch, as chapter 7 trustee for the estate of the above-captioned Debtor (the

"Trustee" for the "Estate" of the "Debtor"), moves for entry of an order, substantially in the form

attached hereto as Exhibit A (the "Bid Procedures Order"): (a) establishing bidding and auction

procedures, (collectively, the "Bid Procedures"), a copy of which is attached hereto as Exhibit B,

in connection with the potential sale of substantially all of the Estate's assets (the "Purchased

Assets"), free and clear of all claims and any other interests, liens, mortgages, pledges, security

interests, rights of first refusal, obligations, and encumbrances of any kind whatsoever

(collectively, the "Interests"), except to the extent identified in a Successful Bidder's (as defined

below) asset purchase agreement; (b) approving the form and manner of sale notices (the "Notice

Procedures"); (c) scheduling an auction (the "Auction") if, subject to the Bid Procedures, the

Trustee receives more than one Qualified Bid (as defined below), and setting a date and time for

a sale hearing (the "Sale Approval Hearing") for the sale (the "Sale") of the Purchased Assets;

and (d) granting certain related relief.

The Trustee further requests that, subject to the results of the Auction and the Bid Procedures, the Court enter an order, substantially in the form attached hereto as <u>Exhibit D</u> (the "<u>Sale Order</u>"): (i) approving and authorizing the Sale of the Purchased Assets free and clear of all Interests except to the extent set forth in a Successful Bidder's (as defined below) asset purchase agreement; and (ii) authorizing the assumption and assignment of certain agreements. In support, the Trustee respectfully states:

### Jurisdiction, Core Nature, and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

2.      On November 4, 2013 (the "<u>Petition Date</u>"), the Debtor commenced this bankruptcy case by filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Shortly afterward, the Trustee was appointed. On December 5, 2013, the Trustee conducted and concluded the meeting of creditors pursuant to 11 U.S.C. §341.

**A.      The Debtor's prepetition business operations**

3.      The Debtor is no longer operating. Prior to the Petition Date, it was headquartered in Roanoke, Virginia, and its business included developing, manufacturing, and marketing electronic spectacle lenses, and also providing enhanced multifocal lenses for bifocal, trifocal, and progressive lens wearers, as well as computer users.

4.      The Debtor's principal product was a set of electronic spectacles that incorporated patented "emPower" technology to allow a wearer to shift the lenses between two different

prescriptions, with separate settings for "up close" and distance vision. The wearer could instantly toggle between the two prescriptions by tapping a button on the side of the spectacles, or could set the spectacles to automatically shift the prescription based on the upward or downward tilt of the wearer's head.

5.    The "emPower" spectacles had a special liquid crystal material in the bottom half of each eyeglass. These crystals changed how the lens refracted light, just as varying levels of thickness do in traditional glasses. Tiny batteries hidden in the frame would transmit an electrical current that changed the orientation of the molecules in the crystals, which would result in an instantaneous change in focus of the lens. This technology eliminated the inconvenience of traditional bifocal glasses, where the "reading" portion of the glass was always present, even when it was not needed. With "emPower" spectacles, the "reading" portion simply disappeared when the wearer did not need it.

6.    The Debtor's assets consist of over 400 patents and patent applications worldwide, plus furniture, fixtures, and equipment located at its Roanoke, Virginia headquarters.

**B.    The alleged secured prepetition indebtedness**

7.    The Debtor is party to a certain Venture Loan and Security Agreement, dated as of April 6, 2011, (as amended, the "Prepetition Loan and Security Agreement") under which Horizon Technology Finance Corporation ("Horizon") provided certain financing to the Debtor, allegedly secured by a first priority lien on substantially all of the Debtor's assets.[1] The sum representing the Debtor's repayment obligations under the Prepetition Loan and Security

---

[1] Subject to the terms of the Interim and Final Orders, the Trustee reserves all rights to challenge the Lender's asserted perfected status with respect to the Prepetition Loan through the end of the Challenge Period (as defined in the Stalking Horse Agreement).

Agreement – as listed on the Debtor's Schedule D at $5,443,279 – appears to exceed the value of the Estate's assets.

8.    According to the Schedule D filed by the Debtor in this bankruptcy case, a number of other allegedly secured creditors hold claims totaling approximately $46.5 million, all apparently subordinate in priority to the Lender's asserted liens securing the Prepetition Obligations.  Accordingly, these other allegedly secured creditors appear to be effectively unsecured pursuant to section 506 of the Bankruptcy Code.

**C.    The Trustee's goal of selling the Purchased Assets and marketing efforts**

9.    The Trustee's principal goal in this case is to sell the Purchased Assets pursuant to a competitive sale process under 11 U.S.C. §363.  The Purchased Assets include substantially all of the Estate's assets, including but not limited to any and all of the Estate's intellectual property, equipment, inventory, fixtures, furniture, contracts, agreements, and other assets of any kind, wherever located.

10.    For several months prior to the Petition Date, the Debtor, with the assistance of an investment banker, conducted a marketing process and solicited bids for substantially all of its assets.  Although the Debtor failed to obtain any bids, this prepetition marketing will give the Trustee a "head start" in his effort to solicit higher and better offers for the Purchased Assets.

11.    The Trustee intends to proceed with Horizon as a "stalking horse," pursuant to a certain Asset Purchase Agreement entered into by and between Horizon and the Trustee (the "Stalking Horse Agreement").  Horizon's stalking horse bid for the Assets (the "Stalking Horse Bid") is $3.7 million, consisting of a credit bid of $3.5 million and a cash bid of $200,000.

12.     In addition, the Trustee has reached an agreement with Horizon under which he will retain a certain portion of the Sale proceeds for administration of the Estate and potential distribution to creditors. This arrangement is set out in the Trustee's Motion for Entry of Interim and Final Orders: (I) Authorizing Him to Obtain Secured Postpetition Financing on Superpriority Basis; (II) Approving Sharing Arrangement; and (III) Granting Related Relief, filed in this bankruptcy case.

13.     Since shortly after the commencement of this bankruptcy case, the Trustee has been working diligently towards effecting a Sale. In an effort to maximize value for the Estate, the Trustee has undertaken a number of steps to ensure that the Sale process will be competitive. Specifically, the Trustee: (i) has activated an already-existing electronic dataroom containing "due diligence" material that the Debtor created prior to the Petition Date; (ii) is in the process of retaining Sherwood Partners as sales agent to assist with the Sale process; and (iii) has spoken with a number of potential purchasers that have expressed an interest in the Purchased Assets, including parties whom the Debtor targeted prior to the Petition Date.

**D.    The Bid Procedures**

14.     To ensure that the Estate receives maximum value for the Purchased Assets, the Trustee has devised the Bid Procedures to govern a competitive bidding process (the "Bidding Process"). The Bid Procedures are as follows:[2]

**Introduction**

Set forth below are the Bid Procedures to be employed in connection with the Sale of the Purchased Assets. At the Sale Approval Hearing, the Trustee will seek entry of an order from

---

[2] In the event of any inconsistencies between the description of the Bid Procedures contained in this Motion and the language of the Bid Procedures themselves (attached as Exhibit B hereto), the language of the Bid Procedures themselves shall govern.

the Court authorizing and approving the Sale to the Qualified Bidder (as defined below) that the Trustee determines to have made the highest or otherwise best bid (the "Successful Bidder").

**Assets to be Sold**

By the Sale Motion the Trustee has requested authority to sell the Purchased Assets. Except as otherwise provided in definitive documentation with respect to the Sale, all of the Debtor's rights, title and interest in and to any Purchased Assets sold in connection with, or as a result of, the Sale shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon in accordance with section 363 of the Bankruptcy Code and applicable provisions of the Uniform Commercial Code.

**The Bidding Process**

The Trustee, consistent with these Bid Procedures and in consultation with Horizon, shall: (i) determine whether any person is a Qualified Bidder; (ii) provide reasonable assistance to Potential Bidders in conducting their due diligence investigations subject to the provisions below; (iii) receive offers from proposed bidders; and (iv) negotiate any offers made to purchase the Purchased Assets. Any person who wishes to participate in the Auction (as defined below) must be a Qualified Bidder. Neither the Trustee nor its representatives shall be obligated to furnish any information of any kind to any person who has not executed a confidentiality agreement as provided for below. Notwithstanding the foregoing or anything else in these Bid Procedures, Horizon is hereby deemed to be a Qualified Bidder for all purposes and at all times, and the bid embodied in the Settlement Agreement (including any subsequent bids at the Auction) is hereby deemed to be a Qualified Bid (as defined below) for the Purchased Assets, for all purposes and at all times.

The Seller has entered into the Stalking Horse Agreement with Horizon for the sale of the Purchased Assets.

To facilitate the Auction and assist the Debtor and other interested parties in assessing the terms of each bid, those prospective bidders who are interested in bidding on the Purchased Assets must utilize the Stalking Horse Agreement to prepare their bids and mark all proposed changes to the Stalking Horse Agreement as part of their bid.

**Bid Deadline**

Any person or entity wanting to participate in the Auction, other than Horizon, must submit a Qualified Bid for the Purchased Assets on or before **January 17, 2014 at noon (Eastern Time)** (the "Bid Deadline") in writing to counsel to the Trustee. The Trustee shall deliver to Horizon and its counsel copies of all bids submitted to the Trustee for the purchase of any of the Debtor's assets, in each case substantially contemporaneously with the Trustee's receipt thereof.

**Qualified Bids**

To qualify as a "Qualified Bidder" with respect to bids on the Purchased Assets, a bidder must submit a "Qualified Bid" (as described below) by the Bid Deadline and: (i) offer to

purchase some or all the Purchased Assets and assume some or all of the Assumed Liabilities (as shall be defined in the Stalking Horse Agreement) with no financing or due diligence contingencies and that is not subject to any other conditions less favorable to the Trustee, as reasonably determined by the Trustee, than those provided for in the Stalking Horse Agreement; (ii) provide consideration for the Purchased Assets in cash and/or assumed liabilities or, to the extent applicable, in the form of cash and a credit bid under Section 363(k) of the Bankruptcy Code; (iii) provide a copy of such Qualified Bidder's proposed Asset Purchase Agreement, which shall be modified by such Qualified Bidder from the form of the Stalking Horse Agreement only to the extent necessary to reflect proposed changes, together with a marked copy of the Stalking Horse Agreement reflecting such changes; (iv) provide a list of contracts and leases that such Qualified Bidder intends to assume; (v) agree to not revoke its bid until the earlier of the closing of a purchase of the Purchased Assets by the Successful Bidder or 15 days after the Sale Approval Hearing and agree to serve as a Backup Bidder (as defined below); (vi) stipulate or otherwise provide evidence to the Trustee's satisfaction that such Qualified Bidder's submission, execution, delivery and closing of the marked up versions of the Stalking Horse Agreement has been authorized and approved by such Qualified Bidder's board of directors (or comparable governing body); (vii) state that such Qualified Bidder is financially capable of consummating the transactions contemplated by the Stalking Horse Agreement, and otherwise provide such other information that will allow the Trustee and its advisors, in consultation with Horizon, to make a reasonable determination as to such Qualified Bidder's ability to consummate the transactions contemplated by the Stalking Horse Agreement, including the Adequate Assurance Package (as defined below); (viii) not seek any transaction or break-up fee, expense reimbursement, or similar type of payment; (ix) provide a Good Faith Deposit (as defined below); and (x) provide for payment to the Trustee by wire transfer or other immediately available funds at closing of an amount equal to the Overbid, as increased pursuant to any further bids at auction (the "Closing Date Payment"). All Qualified Bidders shall be deemed to have consented to the jurisdiction of the Bankruptcy Court. The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale, the Bid Procedures, the Sale Approval Hearing, the Auction, the Stalking Horse Agreement and/or any other matter that in any way relates to the foregoing

A Qualified Bid with respect to the Purchased Assets is one that is a proposal determined by the Trustee not to be materially more burdensome or conditional than the terms of the Stalking Horse Agreement and is an offer to purchase the Purchased Assets for all cash (or cash and credit bid as provided herein) in an amount not less than the amount of $3,700,000 ("Stalking Horse Bid") plus $100,000 (the "Overbid"). A Qualified Bid must be accompanied by such Qualified Bidder's Good Faith Deposit (by means of a certified bank check from a U.S. bank or by wire transfer of immediately available funds).

Nothing herein shall prohibit the Trustee from meeting privately with any Qualified Bidders to negotiate the terms of any bid, *provided, however*, that all bids made or amended after the Auction commences shall be made on the record at the Auction and announced to all participants. At the Auction, Qualified Bidders will be permitted to increase their bids. During the Auction, any overbids after the initial Overbid amount shall be in increments announced prior to the start of the Auction. All bids received during the Auction, whether oral or written, shall be deemed to constitute valid modifications or amendments to the signed contract previously submitted by such bidder.

If no timely Qualified Bid (other than Horizon's Qualified Bid) is submitted, the Trustee shall not hold the Auction, and instead shall request at the Sale Approval Hearing that the Bankruptcy Court approve the sale of the Purchased Assets to Horizon pursuant to the Stalking Horse Agreement.

All Qualified Bids will be considered but the Trustee reserves the right to reject any and all bids other than the highest or otherwise best bid.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Purchased Assets that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bid Procedures or, as to the Successful Bidder, the asset purchase agreement with such Successful Bidder.

## Good Faith Deposits

In addition to all other provisions hereof, in order to become a Qualified Bidder, all bidders will be required to submit a good faith deposit (the "Good Faith Deposit") with the Trustee on or before the Bid Deadline. Such Good Faith Deposits shall be equal to ten percent (10%) of the cash portion of the Qualified Bidder's proposed purchase price and should be payable to the Trustee. Good Faith Deposits of all Qualified Bidders shall be held in a separate non-interest bearing account for the Trustee's benefit until the earlier of consummation of a transaction involving any other bidder for the Purchased Assets and 15 days after the Sale Approval Hearing. If a Successful Bidder fails to consummate an approved sale of the Purchased Assets because of a breach or failure to perform on the part of such Successful Bidder, such bidder's deposit will be held by the Trustee subject to a ruling by the Bankruptcy Court that the Trustee should be permitted to retain such deposit on account of any damages caused by such bidder's breach. All other deposits will be returned promptly after the earlier of closing of the sale of the Purchased Assets to the Successful Bidder and 15 days after the Sale Approval Hearing.

## Due Diligence

The Trustee may afford any potential bidder the opportunity to conduct a reasonable due diligence review in the manner determined by the Trustee in its discretion. The Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline.

The Trustee either has provided or intends to use reasonable efforts to provide to all parties that have either expressed an interest in purchasing the Purchased Assets or who the Trustee believes may have a legitimate interest in purchasing the Purchased Assets (each a "Potential Bidder" and, collectively, the "Potential Bidders"), certain information in connection with the proposed Sale, including, among other things, these proposed Bid Procedures and the Stalking Horse Agreement, but the failure to deliver any such information to any Potential

Bidders shall not affect the validity, effectiveness or finality of the Auction or this sale process. Should any Potential Bidder desire additional or further information, such Potential Bidder will be required to enter into a confidentiality agreement satisfactory to the Trustee in its business judgment. Upon execution of the confidentiality agreement, the Potential Bidder will be given access (through a virtual data room or otherwise) to various financial data and other relevant and confidential information, subject to the Trustee's right to exclude such access for competitive concerns. The Trustee provides no representation or warranty as to the accuracy or completeness of any information provided to Potential Bidders.

### The Auction

In the event that the Trustee timely receives at least one Qualified Bid in addition to the bid of Horizon, the Trustee shall conduct an auction (the "Auction"). The Auction will be conducted at the offices of the Trustee's counsel, Cozen O'Connor, 1201 N. Market Street, Suite 1001, Wilmington, DE 19801, on **January 21, 2014, commencing at 10:00 a.m. (ET)**, or such later time on such day or such other place as the Trustee shall notify all Qualified Bidders, to determine the highest or otherwise best bid with respect to the Purchased Assets. Any bidder submitting a Qualified Bid may appear and submit its highest or otherwise best bid at the Auction. The Auction may be adjourned by announcement at the Auction without further notice.

### Auction Procedures

Prior to the start of the Auction, the Trustee will give Horizon and all other Qualified Bidders a copy of what it believes to be the highest or otherwise best Qualified Bid (or Qualified Bids that, in combination, constitute the highest and best Qualified Bids) and will inform each Qualified Bidder that has expressed its intent to participate in the Auction the identity of all Qualified Bidders that may participate in the Auction. Only Qualified Bidders are eligible to participate in the Auction. Bidding at the Auction shall begin initially with the highest or otherwise best bid announced by the Trustee.

Bidding will continue with respect to the Auction until the Trustee determines that he has received the highest or otherwise best bid for the Purchased Assets. **Any subsequent bids by Horizon may, at Horizon's discretion, be credited with the full amount of the Horizon Secured Debt (as defined herein), provided that such subsequent bids include a cash component equal to (i) $200,000, plus (ii) cash equal to the contingent portion of the Carve-Out Amount (as defined herein).** Such subsequent bids by Horizon shall be considered equivalent to all cash bids. After the Trustee so determines, the Auction will be closed. No additional bids may be considered after the Auction is closed. The bidding at the Auction will be transcribed by a court reporter. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusive behavior with respect to the bidding, the Auction or the Sale.

The Trustee will then determine and announce which Qualified Bid has been determined to be the highest or otherwise best bid. In determining which Qualified Bid is the Successful Bid, the Trustee will consider, at each stage of the Auction, the net economic benefit to the Debtor's estate.

**Adequate Assurance Package**

If any Qualified Bid other than the Stalking Horse Bid requires the assumption and assignment of contracts and leases, then such offeror must identify such contracts and leases to be assumed and assigned and provide evidence of its ability to provide adequate assurance of future performance of such contracts and leases along with the Qualified Bid (an "Adequate Assurance Package").

**Reservation Of Rights**

    a.    **Determination of Highest or Best Bid**

The Trustee reserves the right, consistent with the terms hereof, to: (i) determine in its reasonable discretion which bid is the highest or otherwise best bid; and (ii) reject at any time prior to entry of a Bankruptcy Court order approving an offer other than the Stalking Horse Bid, without liability, any offer that the Trustee in its reasonable discretion deem to be (w) inadequate or insufficient, (x) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein, (y) not a Qualified Bid, or (z) contrary to the best interests of the Debtor.

The selection of a Successful Bidder shall be within the reasonable business judgment of the Trustee and subject to the approval of the Bankruptcy Court. The presentation of a particular bid to the Bankruptcy Court for approval does not constitute the Trustee's acceptance of the bid. The Trustee will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Approval Hearing. At or before the Sale Approval Hearing, the Trustee may impose such other terms and conditions on the Qualified Bidders, other than Horizon, as the Trustee may determine to be in the best interests of the Debtor, its creditors, and other parties in interest.

If no other Qualified Bids are received other than the Stalking Horse Bid and one or more other bids have been received for some or all of the Purchased Assets that do not impose obligations on the estate ("Acceptable Non-Qualified Bid"), at Horizon's request in Horizon's sole discretion, the Trustee shall seek Bankruptcy Court approval of one or more such Acceptable Non-Qualified Bids, with the proceeds of such sales to be paid to Horizon, in such event, and the Purchased Assets to be sold to Horizon shall exclude the Purchased Assets sold pursuant to such Acceptable Non-Qualified Bid. In the event of such a sale, Horizon shall pay to Sherwood Partners the Success Fee owed to Sherwood Partners in connection with such sale, as defined in that certain engagement letter between the Trustee and Sherwood Partners, dated as of December [ ], 2013; and Horizon shall have no claim against the Estate in connection with such payment to Sherwood Partners.

    b.    **Modification of Bid Procedures**

The Trustee reserves the right (i) to extend the deadlines set forth in these Bid Procedures and/or adjourn the Auction and/or the Sale Approval Hearing in open court without further notice and to change the definition of Qualified Bidder, with Horizon's consent, and (ii) otherwise to modify the Auction and the Bid Procedures set forth herein, as may be determined to be in the best interests of the Debtor's estate or creditors. Any such modification shall be

announced prior to the start of the Auction. The Auction, the Bid Procedures and all bids are subject to such other terms and conditions as are announced by the Trustee during the course of the Auction.

### c.    Closing with Stalking Horse or Backup Bidder

If for any reason the entity or entities that submit(s) the highest or otherwise best bid(s) fails to consummate the purchase of the Purchased Assets, or any part thereof, the offeror of the second highest or best bid will automatically be deemed to have submitted the highest or best bid (the "Backup Bidder") and to the extent the Trustee consents, the Trustee and such offeror are authorized to effect the sale of the Purchased Assets to such offeror(s) as soon as is commercially reasonable. If such failure to consummate the purchase is the result of a breach by the winning offeror, the Trustee reserves the right to seek all available damages from the defaulting offeror, including, but not limited to, with respect to the Good Faith Deposit. To the extent Horizon has terminated the Stalking Horse Agreement as provided therein, Horizon shall not be obligated to be a Backup Bidder.

### d.    Carve-Out Amount

Horizon has consented to defer payment in full of its pre-petition secured debt to permit a payment to the Trustee for the benefit of the estate equal to $200,000 plus an additional amount equal to twenty percent (20%) of the purchase price paid at the closing of the Sale in excess of $3,500,000 provided that, if Horizon is the Successful Bidder with a credit bid of $3,500,000 plus a cash bid of $200,000, no such additional amount shall be paid (the "Carve-Out Amount"). The Carve-Out Amount, to the extent payable, shall be paid irrespective of whether the purchase price is paid with cash or by credit bid, and the 20% contingent component of the Carve-Out Amount shall be shared equally between the Debtor's estate and Sherwood Partners (in respect of amounts owed to Sherwood Partners under the terms of its retention by the Debtor's estate). The Carve-Out Amount shall be retained by the Trustee free and clear of any liens and security interests, including but not limited to any liens granted to Horizon in connection with Horizon's provision of post-petition financing, for his use in administering the Estate (including but not limited to payment of chapter 7 administrative claims other than any such claims of Horizon, and potential distribution to general unsecured creditors), and shall under no circumstances be paid to or for the benefit of either Horizon or any other allegedly secured creditor in this Bankruptcy Case on account of their secured claims. For the sake of clarity, the Carve-Out Amount may be paid on account of any unsecured deficiency claim that either Horizon or any other allegedly secured creditor holds in this Bankruptcy Case as part of any distribution to holders of general unsecured claims.

### e.    Debtor's Secured Creditors

All rights under section 363(k) of the Bankruptcy Code are preserved as provided herein.

For the avoidance of doubt, any party exercising its rights to credit bid pursuant to section 363(k) of the Bankruptcy Code must be a Qualified Bidder and submit a Qualified Bid, and may only credit bid with respect to assets on which it has a lien. If a secured lender other

than Horizon seeks to credit bid at the Auction, it shall provide written notice to the Trustee and Horizon, not later than two (2) business days prior to the Bid Deadline.

For the avoidance of doubt, creditors with secured claims subordinate to those of Horizon shall have the right to credit bid but only if such creditor's bid includes a cash component equal to the sum of (i) the Prepetition Debt (as defined in the Stalking Horse Agreement), plus the amount of outstanding obligations pursuant to the Postpetition Financing and Security Agreement, including interest, attorneys' fees and expenses of preservation of collateral and other reimbursable expenses (the "Horizon Secured Debt"), and (ii) the applicable Carve-Out Amount.

**Sale Approval Hearing**

The Sale Approval Hearing will be held on **January 22, 2014 at 1:30 p.m.** at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, before the Honorable Kevin Carey, United States Bankruptcy Judge. The Sale Approval Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open court or on the Bankruptcy Court's docket.

15.     Based on the foregoing, approval of the Bid Procedures would result in the establishment of the following timeline:

(i)      January 17, 2014 at 12:00 p.m. (ET) – Deadline to Submit Qualified Bids

(ii)     January 21, 2014 at 10:00 a.m. (ET) – Auction

(iii)    January 22, 2014 at 1:30 p.m. (ET) – Proposed Sale Approval Hearing

**E.      The Notice Procedures**

16.     The Trustee's proposed Notice Procedures include the following:

(i) **Notice.** The Trustee will give notice (the "Sale Notice"), within two (2) business days after the entry of the Bid Procedures Order, of the Bid Procedures, the time and place of the Auction, the time and place of the Sale Approval Hearing, and the objection deadline for the Sale Approval Hearing by sending a notice, substantially in the form attached hereto as Exhibit E, to (i) the Office of the United States Trustee; (ii) Horizon; (iii) the parties listed on Schedule D filed by the Debtor in this bankruptcy case; (iv) the Internal Revenue Service, (v) the Contract Counterparties; (vi) the United States Department of Justice; (vii) the Office of the Attorney General of the Commonwealth of Virginia; (viii) the Virginia Department of Taxation; (ix) Roanoke County Virginia; (x) City of Roanoke; (xi) all parties that have requested notice pursuant to Bankruptcy Rule 2002; and (xi) any other parties known by the Trustee to have expressed an interest in a transaction with respect to all or part of the Purchased Assets (collectively, the "Notice Parties").

In his sole discretion, the Trustee may, within five (5) business days of the entry of the Bid Procedures Order, cause the Sale Notice to be published in such newspapers or other publications (if any) as he may determine will promote the marketing of the Purchased Assets.

(ii) **Objections**. The Sale Notice will specify that objections to the relief requested by this Motion, including objections relating to the assumption or assignment of any unexpired lease or executory contract, shall be set forth in writing and specify with particularity the grounds for such objections or other statements of position, and shall be filed and served by **4:00 p.m. (ET) on January 17, 2014** (the "Objection Deadline"), on: (i) the Trustee, care of his counsel, Cozen O'Connor, 1201 N. Market St., Ste. 1001, Wilmington, DE 19801, Attn. Mark E. Felger, Esquire; (ii) Horizon, care of its counsel, Ropes & Gray LLP, Prudential Tower, 800 Boylston St., Boston, MA 02199-3600, Attn. James M. Wilton, Esquire; and (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19081 (collectively, the "Service Parties"). The Trustee requests that the Court order that the failure to file and serve objections by the Objection Deadline and in accordance with the foregoing procedure shall be deemed a waiver of such objections and the objecting party shall be forever barred from asserting such objections with respect to the consummation and closing of the Sale, including, without limitation, any objections relating to the proposed assumption and assignment of any agreement. The Sale Notice will further state that any objections filed and served in accordance with the foregoing procedure will be heard by the Court at the Sale Approval Hearing.

F.    **Assumption and assignment of executory contracts and/or unexpired leases**

17.    In conjunction with the Sale, the Trustee will seek to assume and assign to the Successful Bidder certain agreements identified in the Bid pursuant to the procedures described below (the "Assignment Procedures").

18.    As soon as practicable after entry of the Bid Procedures Order, the Trustee will file with the Court a schedule (the "Assignment Schedule") listing: (i) all of the Contracts proposed to be assumed and assigned pursuant to the Stalking Horse Agreement and/or any agreement reached with any other Successful Bidder (the "Assumed Contracts"); (ii) the cure amount, if any, applicable to each Assumed Contract, as shown on the Debtor's records (the "Cure Amount"); and (iii) the name of the applicable Contract Counterparty. The Assignment Schedule may be modified by the Trustee at any time until the closing of the Sale or Sales, at the

request of Horizon or if applicable any other Successful Bidder.  If the Assignment Schedule is modified, the Trustee shall promptly file and serve such modified Assignment Schedule on the affected Contract Counterparties.

19.    Within seven (7) days after the entry of the Bid Procedures Order, the Trustee will serve each of the non-Debtor counterparties to the Assumed Contracts (the "Contract Counterparties") with a notice substantially in the form attached hereto as Exhibit "F" (a "Notice of Assignment and Cure"), which will attach the Assignment Schedule, and which will include a statement that objections to either the Cure Amount and/or to assumption and/or assignment must be filed by the Objection Deadline.  The Trustee reserves the right to supplement any particular Notice of Assignment and Cure.  In the event that the Trustee modifies the Assignment Schedule by adding an agreement, the Trustee shall promptly serve a Notice of Assignment and Cure, attaching the modified Assignment Schedule, upon the counterparty to such agreement.

20.    Any objections to either the Cure Amount and/or to assumption and/or assignment of any Assumed Contracts identified on any Notice of Assignment and Cure, must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Court's Local Rules; and (iii) be filed with the Court and served upon (so as to be received by) the Service Parties on or before the Objection Deadline.  Any such objections must state with specificity the grounds for such objection (with appropriate supporting documentation attached), and, if the Cure Amount is disputed, must set forth a specific monetary cure amount that differs from the amount, if any, specified by the Trustee in the applicable Notice of Assignment and Cure, and provide detailed support for the basis for the asserted difference in the cure amount.

21.    If, following the Trustee's original filing of the Assignment Schedule, the Trustee adds an agreement to the Assignment Schedule and/or the Trustee modifies any Cure Amount

listed on the Assignment Schedule, and such modified Assignment Schedule (whether as an attachment to a Notice of Assignment and Cure or otherwise) is mailed to the counterparty affected by such addition or modification later than ten (10) days prior to the Objection Deadline, then the deadline applicable to any objection of such counterparty to the applicable Cure Amount, and/or to assumption and/or assignment, shall be 4:00 p.m. on the tenth (10th) day following the date on which such modified Assignment Schedule is mailed to such counterparty (the "Supplemental Deadline").

22.    Any party failing to timely file an objection to the Cure Amounts and/or to the assumption and/or assignment of any executory contract or unexpired lease, shall be forever barred from objecting to the Cure Amounts and/or to such assumption and/or assignment, and will be deemed to consent to the Cure Amounts and/or assumption and assignment of such executory contract or unexpired lease.

23.    If a timely objection meeting the requirements hereunder is received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Approval Hearing or a later date set by the Court.  At the sole discretion of Horizon and/or, if applicable, another Successful Bidder: (i) notwithstanding the pendency of a dispute relating to the assumption and assignment of any Assumed Contract, the Trustee and Horizon, or such Successful Bidder, may consummate the transactions contemplated by the Stalking Horse Agreement or other applicable purchase agreement (except for the assumption and assignment of such Assumed Contract subject to the dispute); and (ii) notwithstanding the pendency of a dispute relating to the Cure Amount applicable to any Assumed Contract, the Trustee and Horizon or such Successful Bidder may consummate the transactions contemplated by the Stalking Horse Agreement or other applicable purchase agreement, with  Horizon or such

Successful Bidder to be responsible for paying such Cure Amount in such sum as may be finally determined.

24.      Any dispute with respect to the assumption and assignment of an Assumed Contract or a Cure Amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, before the Court. The Trustee intends to cooperate with the counterparties to the Assumed Contracts to attempt to reconcile any difference in a particular Cure Amount.

## Relief Requested

25.      The Trustee seeks expedited entry of the Bid Procedures Order: (a) approving the Bid Procedures, (b) scheduling the Auction and Sale Approval Hearing and approving the Notice Procedures, and (c) granting certain related relief.

26.      Due to the nature of the Debtor's business and the Estate's shortage of funds, the Trustee believes that entry of the Bid Procedures Order on an expedited basis is warranted. Contemporaneously with this Motion, the Trustee is filing a *Motion for Entry of Order Shortening Notice Period and Scheduling Expedited Hearing*, in which he is requesting that the Court schedule an expedited hearing regarding the relief requested in the Bid Procedures Order.

27.      In addition, at the conclusion of the Sale Approval Hearing, the Trustee will seek entry of the Sale Order: (i) authorizing the sale of the Purchased Assets to the Successful Bidder, (ii) authorizing the assumption and assignment of any designated executory contract(s) and/or unexpired lease(s), and (iii) granting certain related relief.

**Basis for Relief Requested**

**A.    The Bid Procedures are fair and designed to maximize the value received for the Purchased Assets**

28.    The Bid Procedures are designed to maximize the value received for the Estate's assets by facilitating a competitive bidding process in which all Potential Bidders are encouraged to participate and submit competing bids.

29.    The Bid Procedures provide Potential Bidders with more than the twenty-one (21) days' notice of the Sale Approval Hearing required by Federal Rule of Bankruptcy Procedure 2002, and provide Potential Bidders with sufficient opportunity to acquire the information necessary for the submission of timely and informed bids.  Indeed, because of the Debtor's prepetition marketing, many if not most Potential Bidders are already aware of the fact that the Debtor's business is for sale, and have already familiarized themselves with the Purchased Assets.

30.    The Debtor operated in a niche industry, and the universe of Potential Bidders is relatively small.  The Trustee, after consultation with Sherwood Partners and counsel, does not believe that he will need more than the amount of time proposed herein to uncover any Potential Bidders who may not already be aware of the proposed sale process.  Accordingly, the Trustee believes that the proposed time period between the Petition Date and the Bid Deadline is sufficient to allow him to maximize the value of the Purchased Assets.

**B.    The Sale should be approved under 11 U.S.C. § 363(b)**

31.    11 U.S.C. § 363(b)(1) provides, "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  A court should approve a trustee's sale or use of assets outside the ordinary course of business if the

trustee demonstrates a sound business justification for the proposed transaction. See, e.g., In re Martin, 91 F.3d 389, 395 (3d Cir. 1996); In re Abbott's Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986). Once the trustee articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" In re S.N.A. Nut Co., 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995); In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992); In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("A presumption of reasonableness attaches to a Debtor's management decisions").

32.     The Trustee has sound business justifications for selling the Purchased Assets at this time. The Debtor is not operating, and its equipment and other tangible assets are sitting idle. At the same time, the Estate is incurring costs associated with maintaining and storing assets, including the Debtor's substantial worldwide patent portfolio. Due to the specialized nature of the business, and the limited funding available to the Trustee, the Trustee will not be able to continue any sort of operations. Consequently, the only avenue available to the Trustee to generate value for the Estate is an asset sale.

33.     The fairness and reasonableness of the consideration to be paid for the Purchased Assets, as may be declared at the Sale Approval Hearing, will be conclusively demonstrated by exposure to the marketplace. The Trustee has proposed a fair and open process for achieving the highest and best offer for the Purchased Assets.

34.     Particularly in light these circumstances, the Trustee's proposed sale process is consistent with sound business judgment. Under the circumstances, the Bid Procedures and Auction process represent the best way to achieve fair consideration for the Purchased Assets.

35.     Moreover, the Sale of the Purchased Assets will be subjected to a competitive

bidding process, enhancing the Trustee's ability to receive maximum value for the Purchased

Assets.  Consequently, the fairness and reasonableness of the consideration to be received by the

Trustee will ultimately be demonstrated by a "market check" through the auction process, which

is the best means for establishing whether the Trustee is receiving a fair and reasonable price for

the Purchased Assets.

36.     In addition, the Trustee's service of the Sale Notice is reasonably calculated to

provide timely and adequate notice to the Estate's major creditor constituencies, those parties

most interested in this case, those parties potentially interested in bidding on the Purchased

Assets, and others whose interests are potentially impacted by the proposed Sale.

37.     Accordingly, consummating the Sale expeditiously is in the best interest of the

Estate.

**C.     The assumption and assignment of the executory contracts and/or unexpired leases should be approved**

38.     Bankruptcy Code section 365(a) provides that a trustee "subject to the court's

approval, may assume or reject any executory contract or unexpired lease of the debtor."  The

standard governing bankruptcy court approval of a trustee's decision to assume or reject an

executory contract or unexpired lease is whether the trustee's reasonable business judgment

supports assumption or rejection.  See, e.g., Sharon Steel Corp., 872 F.2d 36, 39-40 (3d Cir.

1989); In re Stable Mews Assoc., Inc., 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984).  The business

judgment test "requires only that the trustee demonstrate that [assumption or] rejection of the

executory contract will benefit the estate."  Wheeling-Pittsburgh Steel Corp. v. W. Penn Power

Co. (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting

Stable Mews Assoc., 41 B.R. at 596). Any more exacting scrutiny would slow the

administration of the estate and increase costs. See Richmond Leasing Co. v. Capital Bank

N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

39.     In order to assign an executory contract, a trustee must first assume it. In order to

assume a contract, a trustee must "cure, or provide adequate assurance that [he] will promptly

cure," any default, including compensation for any "actual pecuniary loss" relating to such

default. 11 U.S.C. § 365(b)(1). Here, the Trustee proposes to circulate the Notice of Assignment

and Cure to the Contract Counterparties within seven (7) days following the entry of the Bid

Procedures Order, which will provide Contract Counterparties with sufficient opportunity to

assess the Trustee's proposed cure amounts and assert any objections.

40.     Once an executory contract is assumed, the trustee may then seek to assign the

contract. Pursuant to Bankruptcy Code section 365(f), a Trustee may assign an assumed contract

only if "adequate assurance of future performance by the assignee of such contract or lease is

provided, whether or not there has been a default in such contract or lease." 11 U.S.C. §

365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and

circumstances of each case, but should be given "practical, pragmatic construction." See Carlisle

Homes. Inc. v. Arrari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1989); see

also In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of

future performance does not mean absolute assurance that the debtor will thrive and pay rent).

Among other things, adequate assurance may be given by demonstrating the assignee's financial

health and wherewithal to manage the type of enterprise or property assigned. See In re Bygaph,

Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is

present when prospective assignee of lease from the debtor has financial resources and has

expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

41.     If applicable, in response to any objection to the Successful Bidder's ability to perform under any executory contract and/or unexpired lease, the Trustee will present facts at the Sale Approval Hearing demonstrating the financial wherewithal of the Successful Bidder, and its willingness and ability to perform under the executory contract(s) or unexpired lease(s) in question.  The Sale Approval Hearing, therefore, will provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of any Successful Bidder to provide adequate assurance of future performance

**D.      The Sale should be free and clear of Interests pursuant to 11 U.S.C. § 363(f)**

42.     Bankruptcy Code section 363(f) permits a trustee to sell assets free and clear of all liens, claims, interests, charges, and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).

43.     Under section 363(f), a Trustee may sell all or any part of the debtor's property fee and clear of any and all liens, claims, or interests in such property if: (1) such a sale is permitted under applicable non-bankruptcy law; (2) the party asserting such a lien, claim, or interest consents to such sale; (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

44.     As section 363(f) is written in the disjunctive, a trustee need only meet one of the five conditions of section 363(f). The Trustee will be able to demonstrate at the Sale Approval Hearing that he can satisfy one or more of these conditions with respect to each party holding a lien on or security interest in any of the Purchased Assets. At a minimum, the Trustee expects that he will satisfy the second and fifth of these requirements, if not others as well.

**E.      The Successful Bidder should be entitled to the protections of 11 U.S.C. §363(m)**

45.     Pursuant to 11 U.S.C. § 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. See In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 9 (1st Cir. 1993); In re Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985); In re Congoleum Corp., No. 03-51524, 2007 WL 1428477, at *2 (Bankr. D.N.J. May 11, 2007).

46.     In response to any objection, the Trustee will present facts at the Sale Approval Hearing demonstrating that any Successful Bidder for the Purchased Assets has negotiated at arm's length, and that all parties were represented by their own counsel.

47.     Accordingly, the Sale Order includes a provision that the Successful Bidder for the Purchased Assets is a "good faith" purchaser within the meaning of Bankruptcy Code section 363(m). The Trustee believes that providing any Successful Bidder with such protection will ensure that the Estate will receive the maximum possible price for the Purchased Assets.

**F.      Relief from Federal Rule of Bankruptcy Procedure 6004(h) is warranted**

48.     Federal Rule of Bankruptcy Procedure 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after

the entry of the order, unless the court orders otherwise." The Trustee requests that the Court waive this fourteen day stay, and that the Sale Order be effective immediately.

49.     The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and waive the fourteen day stay, the leading bankruptcy treatise suggests that the fourteen day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., ¶6004.10 at 6004-18 (L. King, 15th rev. ed. 2008). The treatise further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.

50.     As described above, time is of the essence. The Debtor has ceased all operations, and its tangible personal property, including its equipment, sits idle. The Estate does not have sufficient funds to secure and maintain the Purchased Assets beyond the contemplated time frame for this Sale process. In particular, the Estate's substantial intellectual property is expensive to maintain, and the costs are a drain on the Estate. The Trustee needs to move as expeditiously as possible in order to prevent a deterioration in value. Consequently, a waiver of the Rule 6004(h) stay is in the Estate's best interest.

### Notice

51.     Notice of this Motion has been given to the Notice Parties. In light of the nature of the relief requested, the Trustee respectfully submits that no further notice is necessary.

WHEREFORE, the Trustee respectfully requests that the Court enter the Bid Procedures Order substantially in the form attached hereto as Exhibit A: (i) approving the Bid Procedures, (ii) scheduling the Auction and Sale Approval Hearing and approving the Notice Procedures, and (iii) granting related relief; and after a Sale Approval Hearing, enter the Sale Order substantially in the form attached hereto as Exhibit D: (i) approving the sale of the Purchased Assets to the Successful Bidder, (ii) authorizing the assumption and assignment of any designated agreements, and (iii) granting certain related relief and such other relief as the Court may deem appropriate.

Dated:  December 13, 2013                COZEN O'CONNOR

                                         /s/ Simon E. Fraser
                                         Mark E. Felger (No. 3919)
                                         Simon E. Fraser (No. 5335)
                                         1201 North Market Street, Suite 1001
                                         Wilmington, DE  19801
                                         Telephone:  (302) 295-2000
                                         Facsimile:  (302) 295-2013

                                         *Proposed Special Counsel for the Trustee*