**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re** | **:** | **Chapter 7** |
| **PIXELOPTICS, INC.,** | **:** | **Case No. 13-12875 (KJC)** |
| **Debtor.** | **:** | |
| | | **Related Docket Nos. 67, 82 and 85** |

**REPLY IN SUPPORT OF MOTION OF HORIZON TECHNOLOGY FINANCE CORPORATION FOR AN ORDER (I) DIRECTING THE EXAMINATION AND OTHER DISCOVERY OF E-VISION, LLC AND E-VISION SMART OPTICS, INC. PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; AND (II) TO THE EXTENT SUCH DISCOVERY RELATES TO AN OBJECTION OF E-VISION, LLC TO ASSUMPTION AND ASSIGNMENT OF CERTAIN LICENSE AGREEMENTS, SHORTENING TIME TO SUBMIT TO A DEPOSITION AND RESPOND TO DISCOVERY REQUESTS; AND (III) GRANTING RELATED RELIEF**

Horizon Technology Finance Corporation ("Horizon"), senior secured prepetition lender and postpetition lender to PixelOptics, Inc. (the "Debtor"), and stalking horse bidder, by its undersigned counsel, submits this reply (the "Reply") in support of its *Motion for an Order (i) Directing the Examination of e-Vision, LLC, e-Vision Smart Optics, Inc.* (collectively "e-Vision") *and Joel Zychick Pursuant to Federal Rule of Bankruptcy Procedure 2004* ("Rule 2004"); *and (ii) to the Extent Such Discovery Relates to an Objection of e-Vision to Assumption and Assignment of Certain License Agreements, Shortening Time to Submit to a Deposition and Respond to the Discovery Requests; and (iii) Granting Related Relief* (the "Motion") [Docket No. 67]. In support of the Reply, Horizon respectfully represents and sets forth as follows:

## PRELIMINARY STATEMENT

1. Horizon and Jeoffrey L. Burtch, in his capacity as chapter 7 trustee for the Debtor's estate (the "Trustee"), seek focused discovery pursuant to Rule 2004 to ferret out the facts surrounding apparent and continuing attempts by its licensor, e-Vision, to interfere with the

Debtor's rights in various patents and related license agreements (the "License Agreements") in breach of the License Agreements and in violation of the automatic stay.

2. e-Vision's interference, as outlined more fully in the Motion filed on December 23, 2013 and joined by the Trustee on January 6, 2014, has, at a minimum, apparently included:

a. the purported termination of the aforesaid License Agreements, which concern core electro-ophthalmic technology vital to Debtor's business, pursuant to facially deficient termination notices that lack a sound basis for termination under the plain terms of the License Agreements, Motion, ¶¶ 11–12;

b. an attempt to revise, materially, the economic terms of the License Agreements, despite that such an attempt directly contravenes protective language in these License Agreements;[1] and

c. the pre- and post-petition appropriation of Debtor's assets related to the License Agreement, despite that such appropriation not only violates the terms of the parties' License Agreements, but also constitutes willful violations of the automatic stay, Motion, ¶¶ 13–17.

3. As a result of the interference described above, e-Vision has, in effect, blocked the Trustee from making critical patent filings and payments, and potentially jeopardized the continued validity, enforceability, and marketability of Debtor's intellectual property portfolio.

---

[1] Pursuant to an email communication on December 27, 2013, e-Vision's counsel proposed extensive economic revisions to the License Agreements as conditions for the purported "reinstatement" of the License Agreements. This conduct is in breach of the License Agreements, which expressly provide:

> In no event shall Licensor interfere with a Sale of the Company including, without limitation, requiring any material modification to the terms hereof or otherwise require Licensee or any third party to pay Licensor any consideration in connection with such Sale of the Company, except for such consideration as may be required hereunder[.]

License Agreement dated April 12, 2008, § 11.3; Sub-License Agreement dated February 23, 2012, § 10.2.

Moreover, as noted previously in the Motion, the assumption and assignment of the License Agreements and the related transfer of control of the Debtor's intellectual property portfolio to a purchaser will likely be a condition precedent to closing of any sale of the Debtor's assets.

4. In its Objection to the Motion (the "Objection") [Docket No. 85], e-Vision purports to have concerns about the Trustee's ability to maintain the e-Vision patents notwithstanding that the License Agreements grant the Trustee—and not e-Vision—discretion to make critical decisions concerning patent maintenance and prosecution. Horizon has been informed by counsel to the Trustee that e-Vision made a verbal offer in the early days of this case to purchase assets of Debtor. In view of this offer coupled with the fact that e-Vision, in breach of the License Agreements and in connection with a sale, has improperly sought to substantially revise the economic terms of the License Agreements, e-Vision's actions are an obvious attempt to chill bidding and to improperly obtain ownership of assets that Debtor's investors and creditors have paid tens of millions of dollars to develop. The Trustee and Horizon are entitled to full discovery of the facts surrounding e-Vision's actions.

5. Further, in the context of an unfolding sale process, e-Vision asserts and continues to assert material prepetition defaults under the License Agreements and, worse yet, that the License Agreements were effectively terminated prepetition. These issues, which place a cloud on economically significant assets of the estate, are critical and integral to the sale process. Horizon and the Trustee are entitled to full discovery on those issues, especially in view of e-Vision's unwillingness, to date, to provide any information showing material, incurable prepetition defaults under the License Agreement or that the License Agreements were validly terminated prepetition. Despite its refusal to offer any evidence to support a justifiable basis upon which to predicate its alleged terminations, e-Vision has declared publicly in this case and

continues to assert that it has effected pre-bankruptcy termination of the License Agreements. Despite e-Vision's unwillingness to provide this basis to Horizon or the Trustee, e-Vision's continued public allegations have had a clear and likely adverse intended effect on the sale process: *i.e.*, the chilling of bids.

6. In short, in view of the material economic significance that the License Agreements represent for the Debtor's estate, it is urgent that Horizon, as Debtor's senior secured lender and stalking horse bidder, and the Trustee gain expeditious access to the critical discovery required to understand the effect and the extent of e-Vision's interference—interference which stands to endanger these core assets and, accordingly, chill the bidding and sale process. Rule 2004, contrary to e-Vision's Objection, is precisely the procedural vehicle appropriate to procure such discovery.

7. Accordingly, for the reasons set forth in the Motion and this Reply, Horizon respectfully requests that the Court grant the requested relief.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Horizon submits that this Motion is in accordance with Local Bankruptcy Rule 2004-1.

9. Horizon, as the stalking horse bidder and a party in interest, and the Trustee are entitled to investigate, among other things, information that may affect the administration of the Debtor's estate, pursuant to Rule 2004(a) and (b). Horizon and the Trustee are entitled under Rule 2004 to conduct an investigation through examinations of witnesses and requests for production of documents.

## ARGUMENT

**A. The Facts of e-Vision's Unilateral and Willful Interference with the Debtor's Assets Are Subject to Discovery Under Rule 2004.**

10. Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity," Fed. R. Bankr. P. 2004(a), and such examination may relate to, *inter alia*, a debtor's "property," "financial condition," or "any matter which may affect the administration of the debtor's estate," Fed. R. Bankr. P. 2004(b); see also In re Symington, 209 B.R. 678, 683–84 (Bankr. D. Md. 1997) ("Rule 2004 necessarily permits a broad investigation into the financial affairs of debtors to assure the proper administration of bankruptcy estates." (citation omitted)).

11. Despite the sweeping breadth of this text, e-Vision attempts to contend in its Objection that Rule 2004 does not permit examination regarding e-Vision's interference with Debtor's rights in the License Agreements. e-Vision's assertion is wrong and a Rule 2004 examination of e-Vision and its improper actions is proper and necessary under the facts and circumstances of this case.

12. The scope of inquiry under Rule 2004 is intended to be very broad, unfettered, and in the nature of a fishing expedition. See In re Wash. Mutual, Inc., 408 B.R. 45, 50 (Bankr. D. Del. 2009); In re Hughes, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002); In re Ecam Publ'ns, Inc., 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); Keene Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 42 B.R. 362, 364 (S.D.NY. 1984); In re Vantage Petroleum Corp., 34 B.R. 650-51 (Bankr. E.D.N.Y. 1983).

13. Moreover, bankruptcy courts recognize that a touchstone purpose of Rule 2004 is to ferret out "chicanery" or "questionable conduct" that could potentially jeopardize the estate. See In re Vantage Petroleum Corp., 34 B.R. at 651 (citations omitted) (observing that "latitude

should be greater [during Rule 2004 examination] where there has been a showing that [the witness] has engaged in questionable conduct" (citation omitted)); 2435 Plainfield Ave., Inc. v. Twp. of Scotch Plains (In re 2435 Plainfield Ave., Inc.), 223 B.R. 440, 456 (Bankr. D.N.J. 1998) (describing "[a] Rule 2004 exam . . . as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and *the exposure of fraudulent conduct*" (emphasis added) (citation omitted)). "Legitimate goals" of Rule 2004 examinations include "discovering assets, examining transactions, and *determining whether wrongdoing has occurred*." In re Wash. Mutual, Inc., 408 B.R. at 50 (emphasis added).

14. The aforesaid purposes squarely apply here. e-Vision has engaged in a course of conduct that has interfered with and endangered assets vital to Debtor's estate. Indeed, such conduct includes at least one knowing and willful violation of the automatic stay.[2]

15. Accordingly, in view of the broad purpose and text of Rule 2004 coupled with evidence that e-Vision is engaging in willful conduct that stands to diminish the value of the estate, Horizon is entitled to conduct the discovery outlined in its Motion to understand more fully the effect and the extent of e-Vision's interference with estate assets—and, critically, to do so in advance of the scheduled sale on January 22, 2014. Rule 2004 is the appropriate means to

[2] For example, as detailed in a letter from the Trustee to e-Vision dated January 2, 2014, e-Vision purported to transfer representation and management of a patent application from Debtor's intellectual property counsel, Stern, Kessler, Goldstein & Fox, to e-Vision's own counsel, Michael Haynes PLC, on December 13, 2013. This attempt to misappropriate such patent rights, moreover, occurred *after* the Trustee had already notified e-Vision that its course of conduct was violating and would continue to violate the automatic stay. Pertinently, on January 2, 2014, the Trustee wrote:

> I have since learned, to my dismay, that Mr. Joel D. Zychick, President & CEO of e-Vision, notwithstanding my earlier letters [warning that actions to exercise control over property of the estate violates the automatic stay], has continued to violate both the automatic stay and the terms of e-Vision's license to PixelOptics by acting to take control of additional prosecutions of patents licensed to PixelOptics and as to which PixelOptics is granted prosecution authority under the e-Vision licenses.

Ex. 1 (citing email dated December 13, 2013 by which Mr. Zychick purported to transfer representation and management of a patent application from PixelOptic's counsel to e-vision's external IP counsel).

procure such essential fact-finding, particularly on this timeline. See In re Drexel Burnham Lambert Grp., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("[T]he Court views a thorough investigation by both sides [pursuant to Rule 2004] as an aid to the expeditious litigation of . . . issues when and if they arise." (quotation omitted)).

**B. That the Sale Might Be Contested Is No Bar to Proceeding with Rule 2004 Discovery.**

16. e-Vision also contends that it is not subject to examination under Rule 2004 given that "[t]he sale-related motions are contested matters under Bankruptcy Rule 9014." Its position, however, is overreaching. That a matter is contested does not, *ipso facto*, preclude Rule 2004 discovery. Cf. In re Wash. Mutual, Inc., 408 B.R. at 51 (granting motion seeking Rule 2004 examination despite existence of pending litigation).

17. More importantly, e-Vision's position lacks application to this case. e-Vision has yet to object to Debtor's sale[3] and, thus, no contested matter exists. Accordingly, e-Vision lacks foundation for its baseless claim that Horizon is somehow misusing Rule 2004 "to harass and intimidate e-Vision in the exercise of their rights in this bankruptcy case." Rather, Horizon seeks discovery under Rule 2004 for a legitimate purpose: *i.e.*, to investigate the effect and extent of e-Vision's interference with Debtor's estate. The discovery surrounding those facts—which, ironically, might bear out that e-Vision's course of conduct, itself, qualifies as "harassment" and "intimidation"—is an essential step to prevent bid chilling as Debtor proceeds to an imminent sale hearing on January 22, 2014.

**C. Horizon Has Standing to Seek Rule 2004 Discovery Given That It Shares in the Protections of the Automatic Stay Applicable to Debtor's Estate.**

18. Finally, E-Vision contends, without citation to any legal support, that Horizon somehow lacks "standing to complain or raise the issue of alleged violations of the automatic

[3] e-Vision's deadline to object, however, has not expired as of the date of this filing.

stay as it is not the debtor in this case." e-Vision's argument contradicts established law on this point.

19. The broad protections of the automatic stay serve not only debtors, but also creditors. St. Paul Fire & Marine Ins. Co. v. Labuzan, 579 F.3d 533, 543 (5th Cir. 2009) (finding that creditors have standing to challenge automatic stay violations under § 362(k)); Ostano Commerzanstalt v. Telewide Sys., Inc., 790 F.2d 206, 207 (2d Cir.1986) (observing that "the purpose of the stay is to protect creditors as well as the debtor," and as such, "the debtor may not waive the automatic stay"); Paradise Towing, Inc. v. CIT Grp./Sales Fin., Inc., 368 B.R. 569, 572 (W.D. Tex. 2005) ("[C]orporate creditors are clearly intended to benefit from the protection provided under section 362, and the remedy provided under subsection (h) thereof."); Rivera v. Calidad Auto Sales Corp. (In re Rivera), Bankr. No. 09-05079, Adv. No. 12-00247, 2013 WL 6834635, at *7 (Bankr. D.P.R. Dec. 23, 2013) (citing Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2013)). Creditors benefit insofar as the automatic stay "prevents the dismemberment of a debtor's assets by individual creditors levying on the property," In re Rivera, 2013 WL 6834635, at *7 (internal quotation mark and citation omitted), a result which bankruptcy courts have acknowledged as consistent with congressional intent. See In re Ampal-American Israel Corp., No. 12-13689, 2013 WL 6576500, at *4 (Bankr. S.D.N.Y. Dec. 16, 2013) ("The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.") (quoting S. Rep. No. 95–989, at 49 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5835).

20. Accordingly, Horizon shares, along with the Trustee, in the protections of the automatic stay, especially given its status as Debtor's pre- and post-petition senior secured creditor.

## CONCLUSION

WHEREFORE, for all of the above-stated reasons, Horizon respectfully requests that the Court enter an order (i) authorizing the issuance of subpoenas regarding the examination of e-Vision pursuant to Rule 2004 and the production of documents in connection with the Rule 2004 examination, or (ii) in the alternative, to the extent e-Vision objects to the assumption and assignment of the e-Vision Licenses (which, as of the date of this filing, it has not), shortening of the time to respond to the interrogatories, to produce documents, and to submit to depositions, and (iii) granting such other, further relief as this Court deems just and proper.

**[remainder of page intentionally left blank'**

Dated: January 8, 2014
Wilmington, Delaware

Respectfully submitted,

PEPPER HAMILTON LLP

*/s/ John H. Schanne, II*______________________________
David B. Stratton (DE No. 960)
John H. Schanne, II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Tel: 302.777.6500
Fax: 302.421.8390

-AND-

ROPES & GRAY LLP
James M. Wilton
Jonathan P. Reisman
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel: 617.951.7000
Fax: 617.951.7050

*Attorneys for Horizon Technology Finance Corporation*